UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:19-CV-26-EBA

TORRIE HUMPHREY, PLAINTIFF,

V. **MEMORANDUM OPINION AND ORDER**

NATIONWIDE MUTUAL
INSURANCE COMPANY, DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Torrie Humphrey [Humphrey] was leaving Kroger in Shelbyville, Kentucky when she was hit by a car that was backing out of a parking spot. Due to a prior ankle injury, this collision caused a complete Achilles tendon rupture. Humphrey claims she was entitled to underinsured motorist [UIM] coverage under a joint policy she shared with Kenny Smith [Smith], whom she had been living with at the time of the accident. However, when Nationwide Insurance Company [Nationwide], her insurer, denied her coverage, she filed suit for compensatory and punitive damages alleging breach of contract and bad faith. Nationwide now moves for summary judgment. Humphrey has responded. The parties ask this Court to determine if Humphrey is, in fact, entitled to UIM benefits. For the reasons stated below, the Court will GRANT summary judgment to Nationwide, holding that Humphrey is not entitled to UIM benefits based on the plain language of the policy.

**I.**

The essential facts in this matter are not disputed. This case arises from an automobile collision with a pedestrian that occurred on September 25, 2017 in Shelbyville, Kentucky at a Kroger parking lot. On that date, Humphrey was leaving Kroger, while pushing a shopping

cart with her two children, when she was struck by a vehicle pulling out of a parking spot. The vehicle, a 2014 Chevrolet Malibu driven by Katie L. Pontrich [Pontrich], collided with Humphrey's cart, which in turn caused her to topple along with it. This accident resulted in a complete Achilles tendon rupture.

Humphrey settled with Pontrich's insurer, GEICO Insurance Company, receiving a payment under the policy limits in exchange for Pontrich's release. Humphrey then sought to pursue a claim for UIM benefits through a coverage plan with Nationwide; a plan that was shared with Smith. On November 8, 2017, Humphrey was assigned an adjuster. [R. 16-2]. On August 6, 2018, Nationwide denied her claim.[R. 16-7]. Humphrey then filed suit on September 17, 2018 in Shelby Circuit Court, seeking UIM benefits coverage under her plan with Nationwide. [R. 1-1].

On April 12, 2019, Nationwide timely removed this case to the United State District Court for the Eastern District of Kentucky at Frankfort. [R. 1, ¶ ¶ 2-4]. Now, Nationwide moves pursuant to FED.R.CIV.P. 56 and asks this Court to grant summary judgment, since Humphrey is not covered under the terms of its policy. [R. 15]. Specifically, Nationwide asserts that Humphrey does not qualify as an insured because she was not the policyholder— Smith was. Under a clear and unambiguous reading of the contract, Nationwide argues that Humphrey does not fall under one of the three categories for qualifying an insured for purposes of UIM benefits. Conversely, Humphrey asks this Court to find that the policy unambiguously reflects her as the policyholder. If the Court finds that the policy is, indeed, ambiguous, Humphrey asks the Court to find that she is the policyholder under an equitable theory of contract interpretation; thus, estopping Nationwide from denying her coverage.

## II.

Kentucky substantive law applies to Humphrey's UIM claim and the interpretation of Nationwide's policy, but federal law dictates the summary judgment standard. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the nonmoving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine dispute for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). This is so because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323-24.

"A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. When applying the summary judgment standard, the Court must review the

facts and draw all reasonable inferences in favor of the nonmoving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson*, 477 U.S. at 255). The nonmovant "must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted). However, the Court is under "no … duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.* The following factors bear consideration by a court when entertaining a motion for summary judgment:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

6. As on federal directed verdict motions, the "scintilla rule" applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

### III.

In support of its motion for summary judgment, Nationwide argues it has no duty to cover Humphrey's UIM benefits claims because she was not a covered individual for UIM benefits under the policy. Nationwide argues that the "terms … are not susceptible to different or inconsistent interpretation" because Humphrey does not fall within one of three categories for qualifying someone as an insured for purposes of obtaining these benefits. [R. 15-1 at 4]. In other words, she is not: (1) the policyholder itself, since she is not the first person listed in the Declarations, but Smith is; (2) a relative because she is not related to Smith by blood, marriage or adoption; and (3) "occupying" a vehicle at the time of the accident, as defined under the terms of the policy. Smith argues that the terms of the contract are ambiguous because the ampersand (&) joins Smith's name with Humphrey. [R. 16 at 5-7].

The issues raised by Nationwide in its motion for summary judgment are governed by the principles of contract interpretation and present a question of law for this Court to decide. *Kemper Nat. Ins. Co. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002); *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006). This case turns on a question of policy interpretation: whether the terms of the contract are ambiguous enough to exclude Humphrey as covered under Nationwide's UIM policy as a policyholder.

### A.  The Policy

Nationwide issued the contested auto policy for the policy period May 27, 2017 to November 27, 2017. The policy identifies the policyholder in this way: "[p]olicyholder (Named Insured): Kenny L. Smith & Torie Humphrey" [R. 15-2, p. 6]. At the time of the subject accident, the policy listed a 2005 Chevrolet Silverad, a 1996 Chevrolet Lumina, and a 2013 Nissan Altima on the Policy Declarations as the covered vehicles. [R. 15-2 at 6, R. 16-11]. The policy carried liability coverage subject to the terms, conditions, limitations, and exclusions in the policy:

> These Declarations are a part of the policy named above and identified by the policy number above. They supersede any Declarations issued earlier. Your policy provides the coverages and limits shown in the schedule of coverages. They apply to each insured vehicle as indicated. Your policy complies with the motorists' financial responsibility laws of your state only for vehicles for which Property Damage and Bodily Injury Liability coverages are provided.

[R. 15-2 at 6, R. 16-11 at 1]. The "Insuring Agreement" affirms Nationwide's duty "to provide the coverages the policyholder has selected[,]" subject to the "Declarations, which are a part of th[e] policy contract." [R. 15-2 at 11]. Certain words are repeated several times throughout the Declarations. It is thus critical to define them in order to obtain a fair reading of the policy. In relevant part, the words are defined as follows:

1. **" POLICYHOLDER "** means the first person named In the Declarations. The **policyholder** is the named insured under this policy but does not include the **policyholder's** spouse. If the first named insured is an organization, that organization is the **policyholder**.

2. **"YOU "** and **"YOUR"** mean:

    a) the **policyholder** and spouse, if a resident of the **policyholder's** household, when the **policyholder** is a natural person; or

    b) the sole proprietor, majority shareholder or majority member of an organization, or general partner of a family limited partnership, as shown in the Declarations, and spouse, If a resident of the household of the sole proprietor, majority shareholder or majority member, or general partner shown in the Declarations, when the **policyholder** is an organization.

    If the spouse ceases to be a resident of the **policyholder's** household or household of the sole proprietor, majority shareholder or majority member, or general partner during the policy period or prior to the inception of this policy, the spouse will be considered **you and your** under this policy but only until the earlier of:

    a) the end of 90 days following the spouse ceasing to be a resident of the policyholder 's household or household of the sole proprietor , majority shareholder or majority member, or general partner;

    b) the effective date of another policy listing the spouse as the named insured; or

    c) the end of the policy period.

3. **"RELATIVE"** means a natural person who regularly resides in **your** household and who is related to **you** by blood, marriage, or adoption (including a ward or foster child). A **relative** may live temporarily outside **your** household .

4. **" INSURED"** means one who is described as entitled to protection under each coverage.

5. **" WE," "US," "OUR,"** and **"THE COMPANY"** mean or refer to **the company** issuing the policy as shown on the Declarations.

6. **" YOUR AUTO"** means the vehicle(s) described In the Declarations.

…

10. "OCCUPYING" means in, upon, entering, or alighting from.

[R. 16-2 at 11-12]. The parties do not contest the meanings, or the application of these words, as used in its Declarations. Finally, the UIM Coverage Agreement states, in part, as follows:

> **YOU AND A RELATIVE**
> **We** will pay compensatory damages, including derivative claims, because of **bodily injury** suffered by you or a **relative** and due by law from the owner or driver of an **underinsured motor vehicle** of the **policyholder** has selected Underinsured Motorists coverage.
>
> The selected coverage or coverages must be shown in the Declarations and the required premium for such coverage must be paid.

[R. 15-2 at 38]. Likewise, the parties do not dispute the language governing their UIM Coverage Agreement.

### B. The Policyholder

Under Kentucky law, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, indorsement, or application attached to and made a part of the policy." KRS § 304.14–360. Where there are undisputed facts, the construction of insurance contracts in Kentucky constitutes a question of law for the Court to decide. *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994).

In the absence of ambiguity, courts in Kentucky interpret a contract's terms by assigning the language its ordinary meaning, without resort to extrinsic evidence. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal citations omitted); *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999). Where ambiguities in the policy exist, they are to be construed in favor of the insured to effectuate coverage. *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984). Yet, despite this policy inclination, " '[t]he rule of strict construction against an insurance company certainly does not mean that every doubt must be

resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with ... the plain meaning and/or language of the contract.' " *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 564 (6th Cir. 2008) (quoting *St. Paul Fire & Marine Ins. Co. v. Powell–Walton-Milward*, Inc., 870 S.W.2d 223, 226 (Ky. 1994)).

Humphrey does dispute the fact that: (1) Kenny Smith is the first person named in the Declarations; (2) she is not related to Smith by blood, marriage, or adoption; (3) she was not "occupying" the vehicle, as defined within the terms of the Declarations. Instead, she solely asserts that because her name is connected to Smith's with an ampersand (&), the contract is ambiguous and thus, she should also be considered a policyholder. [R. 16 at 5-7].

To support her position, she contrasts the factual distinctions in this case with those in *True v. Raines*, 99 S.W. 3d 439 (Ky. 2003). In *True*, the claimant sought UIM benefits under a policy where he was solely listed as a "driver" and not as a "named insured"; therefore, he was denied benefits. *True*, 99 S.W. 3d at 444-45. By contrast to these facts, Humphrey states that she is also a "Policyholder (Named Insured)" because her name appears next to Smith's. [R. 16 at 7]. This argument impermissibly stretches the policy language.

To rely solely on the fact that Humphrey's name is connected to Smith's with an ampersand symbol is to circumvent the entire language of the policy. Humphrey does not dispute that she does not fall within one of the qualifying categories, but only emphasizes that she was given the expectation of coverage because her name appears on the second line, next to Smith's several times throughout the Declarations. Humphrey's confusion is understandable, at first glance, if the reader does not read the terms and conditions of the subject policy. However, this kind of interpretation seeks to ignore the entire policy itself, as it would overlook the definitions that govern the fair reading and construction of the contract.

In other words, this kind of interpretation runs afoul the Court's duty to look solely at the four-corners of the contract. *Baker v. Coombs*, 219 S.W.3d 204, 207 (Ky. App. 2007).

Humphrey also argues that Nationwide acted deceptively in failing to assert that she was *not* the policyholder until months after she was denied coverage. [R. 16 at 3-4]. Yet, the letters that Nationwide sent Humphrey during the evaluation of her claim clearly identify Kenny Smith as the policyholder and Humphrey as the claimant. [*See*, *e.g.*, R. 16-2, R. 16-4, R. 16-5, R. 16-6, R. 16-7].

In sum, the Court cannot succumb to the idea that the terms of this contract are ambiguous. To read Humphrey as a policyholder simply because her name is located next to Smith's —the actual policyholder— would be a nonsensical interpretation of the contract, undermining the whole policy itself. Humphrey lived in the same household as Smith; she was not, however, the policyholder. This fact is uncontested. Smith and Humphrey were not married, nor related to one another. This, too, is not contested. Lastly, Humphrey was not "occupying" the vehicle, for all purposes, when she was injured. Humphrey also does not dispute this. The contract terms are not ambiguous.

**IV.**

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Only in such a case is summary judgment warranted. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. This is such a case. Therefore, for the reasons stated above,

IT IS ORDERED that:

1. Nationwide's motion for summary judgment [R. 15] is GRANTED.

2. Humphrey's claims against Nationwide are DISMISSED WITH PREJUDICE.

3. A separate judgment shall be entered.

Signed April 9, 2020.



Signed By:
Edward B. Atkins /EBA/
United States Magistrate Judge